AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the
Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Subject Vehicle: A 2013 Silver Toyota Venza, Washington License Plate BRR6772, VIN 4T3BA3BB1DU035380.

Case No. MJ24-214

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Subject Vehicle: A 2013 Silver Toyota Venza, Washington License Plate BRR6772, VIN 4T3BA3BB1DU035380.

located in the Western District of Washington, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1112(a), 1153 | Involuntary Manslaughter |
| 18 U.S.C. §§ 113(a)(6), 1153 | Assault Resulting in Serious Bodily Injury |

The application is based on these facts:

✓ See Affidavit of Special Agent Natalie J. Leavitt, continued on the attached sheet.

☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ________ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

*Applicant's signature*

Natalie J. Leavitt, Special Agent (FBI)
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 04/11/2024

*Judge's signature*

City and state: Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

USAO: 2024R00094

# AFFIDAVIT

STATE OF WASHINGTON )
) ss
COUNTY OF WHATCOM )

I, NATALIE J. LEAVITT, a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI"), being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND PURPOSE OF AFFIDAVIT

1. I make this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of a 2013 Silver Toyota Venza, License Plate BRR6772, VIN 4T3BA3BB1DU035380 (the "SUBJECT VEHICLE"), which is currently in law enforcement possession, as described in Attachment A, for evidence of violations of Title 18, United States Code, Sections 1112(a) and 1153 (Involuntary Manslaughter) and Title 18, United States Code, Sections 113(a)(6) and 1153 (Assault Resulting in Serious Bodily Injury), which may be extracted from the SUBJECT VEHICLE, as more specifically described in Attachment B.

2. This Affidavit and warrant are being presented electronically pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

3. The FBI is investigating whether ALYXANDRA ELIZABETH BILLY ("BILLY") violated Title 18, United States Code, Sections 1112(a) and 1153 (Involuntary Manslaughter) and Title 18, United States Code, Sections 113(a)(6) and 1153 (Assault Resulting in Serious Bodily Injury). As described herein, there is probable cause to believe that the SUBJECT VEHICLE contains evidence of these crimes.

## IDENTIFICATION OF THE SUBJECT DEVICE TO BE EXAMINED

4. On January 10, 2024, the SUBJECT VEHICLE was towed from 3458 Grove Road, Bellingham, WA, following a report that the daughter of the registered owner, Christopher Hadrath, had been in a vehicle collision on Lummi Shore Road on the Lummi Indian Reservation the previous night. The right side of the vehicle has sustained substantial damage. Images were taken of the vehicle, and evidence was collected before



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the SUBJECT VEHICLE was transported and secured by the Whatcom County Sheriff's Office (WCSO) in an evidence bay for purposes of the preservation of evidence.

5. The SUBJECT VEHICLE is currently in the custody of the FBI, pursuant to a search warrant issued by the Honorable Michelle L. Peterson, Case No. MJ24-059 on February 1, 2024. The SUBJECT VEHICLE is further described in Attachment A to this Affidavit.

6. Based on my training and experience, and information provided by other law enforcement officers, I believe the SUBJECT VEHICLE is equipped with an event data recorder ("EDR"). Electronic data, information, and images stored on the SUBJECT VEHICLE's EDR may be successfully extracted using proprietary hardware and software.

7. The requested warrant would authorize the forensic examination of the SUBJECT VEHICLE for the purpose of identifying physical evidence of a vehicle collision, as well as electronic data, information, and images from the EDR described in Attachment B. I seek this warrant so that an examination of the SUBJECT VEHICLE will comply with the Fourth Amendment and other applicable laws.

## AFFIANT BACKGROUND

8. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since 2022. I am currently assigned to the Bellingham Resident Agency of the Seattle Division and the FBI's Northwestern Washington Safe Trails Task Force ("NWSTTF"). My primary responsibilities as a Special Agent include investigations involving violent crimes and other federal crimes on the Indian reservations in Northwest Washington. As a Special Agent for the FBI, I have participated in numerous investigations including, but not limited to assault, theft and embezzlement, sexual abuse, and various other criminal violations. During these investigations, I have executed and assisted in the execution of both search and arrest warrants. Prior to becoming a Special Agent, I spent over three years in the accounting industry working as an accountant in the financial reporting department for a private

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

company. I am also a licensed Certified Public Accountant.

9. The facts set forth in this Affidavit are based on my own personal knowledge, knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers, review of documents and records related to this investigation, communications with others who have personal knowledge of the events and circumstances described herein, and information gained through my training and experience.

10. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during this investigation. Rather, I have included only those facts that I believe are necessary to establish probable cause to believe that evidence, fruits and instrumentalities of the above-described violation will be found in the SUBJECT VEHICLE, as described in Attachment A.

## SUMMARY OF PROBABLE CAUSE

11. On the morning of January 10, 2024, the custodian at the Lummi Cemetery called 911 after observing debris near the cemetery driveway, as well as what appeared to be a mannequin or a human body in the ditch. Officers from Lummi Nation Police Department ("LNPD") responded to the scene and determined that the female lying in the ditch was deceased. She was later identified as Miranda Ziesing. LNPD officers reached out to the Washington State Patrol ("WSP") and the Whatcom County Sheriff's Office ("WCSO") to assist with the investigation. WSP and WCSO officers collected evidence from the scene including vehicle debris and personal belongings on the ground near Ziesing's body. The Whatcom County Medical Examiner's Office also responded to the scene and collected Ziesing's body for a postmortem examination to determine the cause, manner and circumstances surrounding her death.

12. At approximately 10:27 am on January 10, 2024, Carrie Berg called 911 and reported that her daughter, Hanna Hadrath, was involved in a vehicle collision on Lummi Shore Road the previous night. Hadrath told Berg that a friend was driving at the

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

time of the collision. Berg described the vehicle, which is registered to Hanna Hadrath's father, Christopher Hadrath, as a silver, 2013 Toyota Venza.

13. Officers responded to Berg's residence and saw a 2013 Toyota Venza wagon, license plate WA BRR6772, the SUBJECT VEHICLE, parked outside. There was obvious damage to the right front passenger corner. The vehicle appeared to match the color of some of the vehicle debris recovered at the scene. Pieces were missing from the passenger side front bumper. The passenger front headlight was smashed, and the fog light was missing. The passenger side of the hood was bent, and the passenger front fender showed heavy contact damage. The inner fender liner was missing from the passenger side front wheel well. The passenger side rear view mirror was missing, but the base post of the mirror was present. There was a dent on the top of the passenger side of the hood where it appeared something had scraped along the hood. The windshield had contact damage just above the wiper, and spider cracking spreading outward. There was a long black hair stuck on the mirror base of the passenger front door and a reddish fluid near the tire well of the passenger front wheel. The hair and swabs of the reddish fluid were collected as evidence. A tow truck transported the SUBJECT VEHICLE to the WCSO to be secured as evidence.

14. WCSO deputies spoke with Hannah Hadrath who showed them Facebook Messenger messages that she exchanged with BILLY on her cell phone. She also provided her PIN ("Personal Identification Number") code to access the device. WCSO deputies collected the cell phone and booked it into evidence.

15. Hadrath agreed to be interviewed at the WCSO. The interview was audio and video recorded. Hadrath was advised of her rights and signed a waiver. She provided the following information.

16. On the night in question, Hadrath drove a Toyota Venza and picked up her friend, BILLY, at her house. They drove down to the water near the Lummi Ferry. They smoked a cigarette and went to get alcohol. Hadrath drove with BILLY to the "260" liquor store, which I understand is a reference to the Lummi Bay Market at Exit 260 off

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of I-5. BILLY went inside and bought a half gallon of vodka and a 4 Loko. They drove back to the water near the Lummi Ferry, where they sat in the car and took shots of vodka. At some point, they went to pick up Hadrath's friend, Willy Owdings. The three of them went back down to the water. Owdings brought a joint of marijuana with him and three of them smoked it in her car.

17. Hadrath drove Owdings back to his house and returned to the water with BILLY. They continued to take shots of vodka. BILLY talked about not driving much, so Hadrath let BILLY drive her vehicle while she sat in the passenger seat. They drove for approximately 30 minutes. Once BILLY started driving, Hadrath began to drink more and did not remember much afterwards because of her level of intoxication.

18. While BILLY was driving along Lummi Shore Drive, the vehicle struck an unknown object. Hadrath heard a loud noise, but she did not see anything due to the darkness. She felt the impact from the collision, which caused her to sway sideways. BILLY asked Hadrath if they had hit a deer. Hadrath thought they struck a dog or mailbox. BILLY did not stop and continued to drive to her house. Hadrath and BILLY got out of the vehicle looked at the vehicle and saw that it had sustained substantial damage. Hadrath did not remember anything else once they got to BILLY's house. Hadrath woke up around 7:30 am and found her car keys in the pocket of BILLY's basketball shorts. The empty bottle of vodka they had been drinking from was on BILLY's bedroom floor.

19. Later that morning, WCSO deputies responded to BILLY's residence at 2499 Mackenzie Road. BILLY was read her rights. She stated she understood them and agreed to be interviewed at the WCSO. BILLY had a cell phone on her person, a black Android Samsung cell phone. BILLY provided her PIN code to access the device. WCSO deputies collected cell phone and booked it into evidence.

20. BILLY asked if she was going to jail and the WCSO deputy advised her that she was going to the station to be interviewed. BILLY responded, "I'm gonna say the same thing. I thought I hit a deer." BILLY then mentioned that her arm was hurting

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and she cut herself. She was bleeding and didn't want to get blood in the vehicle. After the WCSO deputy stopped the vehicle and saw that BILLY's arms were bleeding and flayed open, medics were called. BILLY explained that she had not cut herself in three years, but she did so again today. When asked why, BILLY stated "I thought I hit a deer and they told me I hit a person. And so this like triggered me." Medics arrived shortly thereafter and transported her to St. Joseph's Hospital. Later that day, FBI agents responded to the hospital and conducted an audio-recorded interview of BILLY. After BILLY was read her rights and consented to the interview, she provided the following information.

21. Hadrath picked BILLY up at her residence around 5:00 pm the previous evening. They hung out at Lummi Shore beach for about an hour. Hadrath and BILLY went and got vodka at the "260 store" around 6:00 pm. Hadrath and BILLY later picked Hadrath's friend, Willy Owdings. They talked and smoked some weed for another hour or so. BILLY thinks Owdings left them at approximately 8:00 pm.

22. BILLY had taken two shots before driving Harath's vehicle. BILLY hit what she thought was a deer. BILLY tried to slow down, but Hadrath told her to keep driving. BILLY and Hadrath went back to BILLY's house and fell asleep. When BILLY woke up the next day, Hadrath was already gone. She later received a message from Hadrath that they had hit a person.

23. LNPD officers responded to the hospital and executed tribal search warrant to obtain samples of BILLY's blood for toxicological analysis. After BILLY was discharged from the hospital, she was arrested on tribal charges of Vehicular Homicide and DUI and transported to Whatcom County Jail.

24. On January 12, 2024, the Whatcom County Chief Medical Examiner conducted a forensic examination of Ziesing's body. The examiner noted that Ziesing sustained the following injuries, which were consistent with her being hit by a motor vehicle: a broken right femur, broken left foot, broken left scapula, broken sacrum, and a basilar skull fracture. A urinalysis was also conducted and tested presumptive positive for

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

methadone, amphetamine, methamphetamine, fentanyl, and carfentanyl.

25. Surveillance was also collected from various locations, including Ring camera footage from BILLY's neighbor across the street, footage of the beach access area on Lummi Shore, and the Lummi Bay Market at Exit 260 where BILLY purchased alcohol on the night in question. The following timeline from January 9, 2024 through January 10, 2024 was determined through analysis of the footage.

| TIME | LOCATION |
|---|---|
| 5:41 pm | BILLY purchased alcohol at Lummi Bay Market-260 Store, 4839 Rural Ave |
| 6:19-6:50 pm | Silver vehicle parked at beach access |
| 7:37-7:45 pm | Silver vehicle parked at beach access |
| 8:08-8:16 pm | Silver vehicle parked at beach access |
| 9:16-9:41 pm | Silver vehicle parked at residence, 2502 Mackenzie Road |
| 10:31 pm-7:25 am | Silver vehicle parked at residence, 2502 Mackenzie Road |

26. I have confirmed that BILLY is an Indian: she has an Indian blood quantum of 83/128ths and is an enrolled member of the Swinomish Indian Tribal Community, a federally recognized Indian tribe. I have also confirmed that the location where the collision occurred lies within the exterior boundaries of the Lummi Indian Reservation.

## TECHNICAL BACKGROUND REGARDING VEHICLE ELECTRONIC CONTROL MODLULES AND EVENT DATA RECORDER SYSTEMS

27. Based on my training and experience, as well as discussions with other experienced law enforcement officers, I have learned the following information.

28. Motor vehicles contain various electronic control modules (also called electronic control units). An electronic module, or electronic control unit, is an electronic computer system that monitors, regulates, and controls a specific function within the vehicle. For example, an engine control module is responsible for electronically monitoring, regulating, and controlling a vehicle's engine, and an airbag control module (or sensor) is responsible for monitoring, regulating, and

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

controlling the vehicle's airbag deployment system. The average vehicle contains dozens of electronic control modules that regulate various vehicle functions.

29. Vehicle manufacturers place event data recorders within the electronic control modules in their vehicles. Event data recorders collect pre-collision data which often includes the vehicle's pre-collision speed, braking status, the percent of the vehicle's throttle engagement, as well as other collision-related data. Individual manufacturers place their collision recording equipment in separate locations (within separate electronic control modules) and use different terminology to refer to the modules where the collision data is stored. The modules' names include Supplemental Restraint System Control Modules, Engine Control Modules, Airbag Electronic Control Units, Airbag Control Modules, Restraint Control Modules, Sensing Diagnostic Modules, Occupant Restraint Controllers, or Sophisticated Airbag Sensor Modules. Regardless of the terminology used to describe the event data recorder, and the module where the event data recorder is located, event data recorders can collect pre-collision data from vehicles and that the data can be retrieved by the use of appropriate software.

30. The Washington State Patrol employs troopers who are trained to image/copy the data inside these vehicle modules and to interpret the data retrieved from event data recorders. This information is useful to troopers trained in crash reconstruction to help determine the cause(s) of a collision.

31. The equipment utilized in a crash reconstruction can often communicate with the modules without removing the modules from the vehicle. However, certain collisions destroy vehicles to the point the modules must be removed and communicated with in a method known as Direct to Module ("DTM").

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**BACKGROUND REGARDING VEHICLE COLLISION RECONSTRUCTION AND INVESTIGATION**

32. Based on my training and experience, as well as discussions with other experienced law enforcement officers, I have learned the following additional information.

33. Various devices contained in vehicles may contain pre-trip travel patterns leading up to a collision. Cellular devices, global positioning system (G.P.S.) devices, fleet management systems, and many other electronic devices can record travel patterns, speeds and possible distracting occurrences of the operator. These devices, and the data contained inside, are useful to collision investigators in determining pretrip events and locations where the vehicle may have stopped before the collision and any distractions which could have contributed to the collision.

34. When a vehicle collides with objects and a significant change of speed occurs, the vehicle may be deformed, causing glass to break, metal and plastic parts to bend and break. The collision will likely result in the transfer of evidence to and from the collision object. Trademark deformations are made that allow vehicles to be compared to the object causing the damage. When humans are struck by motor vehicles, evidence may be located on and under the vehicle. Items to indicate contact with the vehicle during an impact include, but are not limited to; body fluids, hair, fingerprints, blood, semen, saliva, physiological fluid, secretions, hair, fibers, latent prints, shoe prints, clothing, and other garments, dirt, dust, soil, glass, metal, pain and plastic fragments, items containing traces of any of the preceding articles on the exterior of the vehicle.

35. Motor vehicles have certain controls on the interior that control the sound system, headlamps, taillights, windshield wiper status, and other features on the vehicle. The lamps on the exterior of the vehicle may experience certain deformities that can be analyzed to determine if the lamps were incandescent or not at the time force was applied. Motor vehicles have a manufacturer's certification label and tire loading

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information label that depicts the proper tire sizes, loading index, and tire pressure for that vehicle. When conducting a crash investigation, the actual tire and wheel size, including air pressure, tread depth, and vertical weight can affect the stability and functioning of a vehicle. Conducting a post-collision inspection of the vehicle's interior and exterior assists collision investigators in determining the cause and contributing factors involved.

36. A vehicle collision is an example of Newton's third law of motion. The occupants of the vehicle will move in a direction opposite of the force being applied to the vehicle at the same magnitude as the speed change. When this occurs, occupants may contact the seat belts, airbags, and interior of the motor vehicle depending on the principal direction of force applied. When this occurs, the human body may be injured, depositing body fluids, hair, fingernails, fingerprints, blood, semen, saliva, physiological fluid and secretions. The clothing worn by occupants will contact the seat belts, airbags, and interior of the motor vehicle. When this occurs, the clothing and shoes may deposit fibers, shoe prints, parts of clothing and other garments inside the vehicle, and during an ejection or partial ejection from the interior of the vehicle, the same items may be deposited on the exterior of the vehicle. This information is of value to crash investigators in determining the occupancy seating positions and explaining the mechanism of injury.

37. The WSP employs crash investigators or reconstructionists who use diagrams, mathematical formulas, photographs, and information obtained from a post-collision inspection to determine speed, time, distance, change of velocity, principal direction of force and occupant kinematics involved in a collision.

38. Reconstructionists rely upon this information and information obtained from digital media and service records when conducting criminal investigations to assist in determining whether a driver violated state or federal law. This information assists law enforcement in determining the causation and contributing factors of the collision.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

39. To complete a forensic examination of the SUBJECT VEHICLE, it may be necessary, temporarily, to remove trim and other components of the Vehicle to access the information subject to search. It may also be necessary to repair the device, replace the screen, reconnect wires, and replace batteries. It may be necessary to employ advanced forensic processes to bypass locked display screens and other data access restrictions. Advanced processes may include potentially destructive forensic techniques used to remove memory chips from computers and other electronic storage containers that may be found within the Vehicle. In the event that potentially destructive processes are required to perform this extraction, parts of the SUBJECT Vehicle may be destroyed and rendered useless.

//

//

//

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

40. Based on the foregoing, I submit there is probable cause for a search warrant authorizing a search of the SUBJECT VEHICLE, as described in Attachment A, and the seizure of evidence and/or fruits and instrumentalities of the commission of the above listed offenses, as set forth in Attachment B.

41. Finally, because this warrant seeks only permission to examine a vehicle already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night. The requested warrant authorizes a later review of the data and information seized or copied from the SUBJECT VEHICLE, which review may continue past the date required for execution of the warrant.

NATALIE J. LEAVITT
Special Agent
Federal Bureau of Investigation

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit by telephone on this 11th day of April 2024.

BRIAN A. TSUCHIDA
United States Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A

**Description of Property to Be Searched**

The SUBJECT VEHICLE, which is pictured below and is more particularly described as a 2013 Silver Toyota Venza, Washington License Plate BRR6772, VIN 4T3BA3BB1DU035380. The SUBJECT VEHICLE was secured by the FBI on February 1, 2024 for purposes of the preservation and extraction of evidence.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

**Description of Items to be Searched for and Seized**

**This warrant authorizes the government to search for and seize:**

All items that constitute evidence, instrumentalities, and/or fruits of the violation of Title 18, United States Code, Sections 1112(a) and 1153 (Involuntary Manslaughter) and Title 18, United States Code, Sections 113(a)(6) and 1153 (Assault Resulting in Serious Bodily Injury), including:

I. Photographs of the vehicle, including documentation of the evidence contained in paragraphs II-IX.

II. Event Data Recorder(s)/Engine Control Modules/Electronic Control Modules capable of storing data related, but not limited to; a traffic crash, fault codes, hard brake records, and last stop records.

III. Electronic Control Unit diagnostic data, speed and event data, fleet maintenance systems data from the vehicle's telematics and infotainment systems.

IV. Digital media contained on electronic storage devices including, any cellular phones, infotainment systems, global positioning systems, fleet maintenance systems, and other electronic devices capable of storing digital media including, but not limited to, roadways traveled prior to collision, speeds, content of communications, and driving activities of the operator to include the use of electronic devices while the vehicle was moving from January 9, 2024 to January 10, 2024.

V. Items that may indicate occupant seating positions prior to a collision contact points inside the vehicle during the collision sequence and ejection portals including but not limited to; body fluids, hair, fingernails, fingerprints, blood, semen, saliva, physiological fluid, secretions, fibers, latent prints, shoe prints, shoes, clothing and any items containing traces of any of the preceding articles or items containing traces of any of the preceding articles on the interior of the vehicle.

VI. Items containing evidence to indicate contact with the vehicle during an impact including but not limited to; body fluids, hair, fingernails, fingerprints, blood,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

semen, saliva, physiological fluid, secretions, fibers, latent prints, shoe prints, shoes, clothing and any other garments, dirt, dust, soil, glass, metal, paint and plastic fragments, items containing traces of any of the preceding articles on the exterior of the vehicle.

VII. Inspection and documentation of the on/off positions of the instrument controls on the interior of the vehicle, inspection of any lamps or bulbs contained on the interior or exterior of the vehicle that may show indications of their use during the collision known as cold/hot shock. Inspection and documentation of the seat belt harnesses, connectors, and webbing to show the use or lack thereof. Inspection and documentation of the tire and wheels to determine the types in use, air pressure to ensure the authenticity of information recovered from any event data records and weighing of the vehicle to determine the total weight by gross, axle and tire points. Inspection and documentation of the braking system of the vehicle. Inspection and documentation of the vehicle's mechanical components necessitates the vehicle's safe operation on a roadway, including front-end components, steering components, braking components, and other mechanical components necessary to operate the vehicle safely.

VIII. Papers and receipts showing recent repairs of the vehicle and receipts showing recent locations of the occupant and locations of those purchase could lead to the identification of witnesses regarding the pre-trip events of the occupant—papers and receipts showing dominion of the vehicle.

IX. Items that may affect a person's ability to operate a motor vehicle safely, including items that may cause impairment.

X. Inspection of the vehicle's mechanical components, to include: the vehicle's front-end components that support and effectively steers and controls the vehicle to be safely operate upon a public roadway; mechanical components related to the steering and suspension of the front end of the vehicle, to include the tires and wheels, tie rods, suspension arms, joints and applicable attachment components that assist the vehicle operator with safely maneuvering the vehicle.

This warrant authorizes a review of electronically stored information,

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970